**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LADISLAV NAVRATIL,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>FREMONT REORGANIZING<br>CORPORATION F/K/A FREMONT<br>INVESTMENT & LOAN, et al.,<br><br>　　　　　　Defendants. | Civil Action No. 1:13-cv-12785<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF THE GOLDMAN SACHS GROUP, INC.'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Pursuant to Fed. R. Civ. P. 12(b)(6), defendant The Goldman Sachs Group, Inc. ("GS Group") respectfully submits this memorandum in support of its motion to dismiss the Complaint ("Complaint") of plaintiff Ladislav Navratil ("plaintiff").

Plaintiff's Complaint with respect to GS Group fails because it is entirely based upon a defectively pleaded and unviable agency theory. Plaintiff's claim brought pursuant to Mass. Gen. Laws ch. 93A ("Chapter 93A") against GS Group hinges on his theory that GS Group, by virtue of its corporate ownership of Litton Loan Servicing LP ("Litton"), is liable for Litton's purported conduct in connection with Litton's servicing of one of plaintiff's mortgage loans. Plaintiff fails, however, to allege a single fact necessary to establish an agency relationship between GS Group and Litton, or allege facts that in any way connect GS Group to the alleged conduct of Litton with respect to plaintiff's loan. As a matter of law, plaintiff has not demonstrated – and cannot demonstrate – that GS Group's mere ownership of Litton constitutes a principal-agent relationship. Even if his Chapter 93A claim against GS Group was not based on a fatally flawed theory of vicarious liability, plaintiff's claim nevertheless fails because it is

(i) time-barred, having been brought well after the expiration of the statute of limitations; (ii) procedurally defective in that plaintiff failed to send GS Group the statutorily-required Chapter 93A demand letter; and (iii) fails to allege a predicate act that is unfair or deceptive on the part of GS Group. Accordingly, plaintiff's claims should be dismissed with prejudice as to GS Group.

## I.  SUMMARY OF PLAINTIFF'S ALLEGATIONS[1]

### A.  Plaintiff's Mortgage Loans

The claims set forth in plaintiff's Complaint arise out of plaintiff's mortgage loan transaction in April 2006. In particular, on April 7, 2006, Fremont Investment & Loan ("FIL") originated a loan to plaintiff in the amount of $425,360 (the "First Loan"), which loan was secured by a mortgage on the property located at 63 Eleventh Street South, Edgartown, Massachusetts (the "Property"). See Compl. ¶ 14. On the same date, FIL originated a second loan (the "Second Loan") to plaintiff in the amount of $106,340, which loan was secured by a second mortgage on the Property. Id. ¶ 15. Plaintiff asserts that at the time FIL made the First and Second Loans, FIL "knew or should have known that [plaintiff] was not likely to repay these loans." Id. ¶ 21. Plaintiff further asserts that as a result of the origination of his loans, he has incurred "excessive and unfair" interest charges, which defendants knew or should have known that he could not pay. Id. ¶ 49. As a result of such conduct, plaintiff's Complaint purports to be "a claim for declaratory and injunctive relief, requesting a declaration that two mortgage loans made by [FIL] to plaintiff are 'Presumptively Unfair,'" and "a claim for relief pursuant to General Laws Chapter 93A against Litton Loan Servicing LP, Goldman Sachs Group Inc., Ocwen Financial Group and Ocwen Loan Servicing, LLC." See Compl. pages 1-2.

---

[1]  GS Group reserves its right to contest any of the allegations pleaded.

### B. Plaintiff's Allegations With Respect To GS Group

With respect to GS Group, plaintiff does not plead any affirmative conduct or direct interaction between plaintiff and GS Group. Plaintiff does not allege that GS Group originated the First Loan (which it did not), that GS Group serviced the First Loan (which it did not), that GS Group securitized the First Loan (which it did not), that GS Group owned the First Loan (which it did not), or that GS Group played any role in the assignment of the First Loan (which it did not).[2] Instead, the Complaint seeks to hold GS Group liable based solely on the actions of Litton, which serviced plaintiff's First Loan for a limited period of time. In particular, the Complaint alleges that from June 1, 2008 to September 2011, GS Group owned Litton. Compl. ¶ 34. Plaintiff further alleges, "upon information and belief," that when GS Group owned Litton, Litton acted as GS Group's agent "in its dealings with plaintiff." Id. ¶ 34.

Plaintiff alleges that he has paid and continues to incur interest charges and penalties due on the First Loan which are excessive and unfair, and that Litton knew or should have known he could not pay after the expiration of the 2-year introductory period in April 2008. Id. ¶ 49. Plaintiff also claims that "Litton, its parents, successors and assigns knew or should have known" that his loans were "doomed to fail from the time they were originated" in April 2006. Id. ¶ 50. Plaintiff asserts that because GS Group "owned [Litton] prior to selling [Litton] to Ocwen Financial Corporation … in the alternative, [GS Group] is liable for the acts and omissions of Litton." Compl. Introduction, page 2 (emphasis added).

---

[2] Plaintiff also does not allege any connection between Litton or GS Group with respect to plaintiff's Second Loan, and instead alleges that the Second Loan is serviced by, owned by, and originated by entities other than Litton or GS Group. See Compl. ¶¶ 37-39.

## II. STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face only where the complaint "contain[s] sufficient factual matter" that pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," such as the allegations on display in plaintiff's Complaint, "do not suffice." Id.; see also Lemelson v. U.S. Bank Nat. Ass'n, 721 F.3d 18, 21 (1st Cir. 2013). Furthermore, if it appears that – as here – plaintiff cannot recover on any viable theory, then dismissal of the claims with prejudice is proper as any amendment would be futile. See Todisco v. Verizon Commc'ns, Inc., 497 F.3d 95, 98 (1st Cir. 2007) (affirming denial of motion to amend after court dismissed complaint under Fed. R. Civ. P. 12(b)(6)).

## III. ARGUMENT

### A. Plaintiff's Complaint Fails To Allege An Agency Relationship Between GS Group And Litton

Plaintiff proceeds against GS Group on an agency theory of liability and alleges no affirmative conduct on the part of GS Group. To establish an agency relationship, plaintiff must allege (1) a manifestation of consent by one to another that the other shall act on its behalf, and (2) that the agent is subject to the principal's control. See In re Lernout & Hauspie Sec. Litig., 230 F. Supp. 2d 152, 173 (D. Mass. 2002) ("In re Lernout") (granting motion to dismiss where allegations of complaint did not support existence of agency relationship). "Whether such an agency is formed depends on the actual interaction between the putative principal and agent, not

on any perception a third party may have of the relationship." Id. Where plaintiff fails to allege mutual consent between the purported principal and agent to enter into an agency relationship, and that the purported principal exercised control over the purported agent, the plaintiff cannot establish that an agency relationship exists. Id.

The Complaint fails to meet this pleading standard. The entirety of plaintiff's agency theory is predicated on plaintiff's allegations that "Goldman owned Litton," and that "upon information and belief … Litton, in its dealings with plaintiff was the agent of its parent Goldman, and acted within the scope of its agency." Compl. ¶ 34 (emphasis added). An agency theory of liability cannot be sustained on such conclusory allegations. As an initial matter, plaintiff's claim that an agency relationship existed between GS Group and Litton, purely by virtue of GS Group's ownership of Litton, is without merit. See United States ex rel. Kneepkins v. Gambro Healthcare, Inc., 115 F. Supp. 2d 35, 39 (D. Mass. 2000) ([o]wnership – even total ownership – of a corporation does not by itself impart the corporation's liabilities to the owner, and that rule is not abated simply because the owner happens to be another corporation"). Moreover, plaintiff nowhere alleges that there was mutual consent or an agreement between GS Group and Litton pursuant to which Litton would act on GS Group's behalf in its dealings with plaintiff's First Loan. Because the Complaint is devoid of any allegations that describe the requisite nature and existence of the purported agency relationship, the Chapter 93A claim against GS Group should be dismissed. Fernandes v. Havkin, 731 F. Supp. 2d 103, 117-18 (D. Mass. 2010) (dismissing Chapter 93A claim against alleged principal based on actions of purported agent where agency relationship insufficiently established).[3]

---

[3] Plaintiff does not allege that Litton – let alone GS Group – had any connection with plaintiff's Second Loan. As such, no claim against GS Group can be sustained with respect to the Second Loan.

Nor does the Complaint sufficiently allege that GS Group ever exercised control over Litton with respect to plaintiff's First Loan. Where, as here, plaintiff fails to allege that the purported principal exercised control over the alleged agent, plaintiff has failed to state a claim for agency. Canney v. City of Chelsea, 925 F. Supp. 58, 64 (D. Mass. 1996) (granting motion to dismiss; plaintiff must allege specific allegations that principal controlled agent to demonstrate agency). Similarly, plaintiff's allegations in no way can be interpreted to sustain a claim against GS Group under a piercing the corporate veil theory, which requires plaintiff to allege that there is "pervasive control" with a "fraudulent or injurious consequence of the intercorporate relationship," or a "confused intermingling of activity" between two corporations with a "substantial disregard of the separate nature of the corporate entities." See Techtarget, Inc. v. Spark Design, LLC, 746 F. Supp. 2d 353, 356 (D. Mass. 2010) ("control in and of itself is not sufficient to disregard the corporate entity").

Accordingly, plaintiff fails to allege a single fact that would establish the existence of an agency relationship between GS Group and Litton. These deficiencies are fatal to plaintiff's agency theory, and to plaintiff's Complaint against GS Group. Because plaintiff has failed to adequately plead agency, none of the purported actions of Litton may be attributed to GS Group, and the Court should dismiss the Complaint as to GS Group. Canney, 925 F. Supp. at 64 (dismissing complaint against purported principal where no agency relationship exists).

### B. Even If Plaintiff Had Alleged An Agency Relationship, Plaintiff's Complaint Fails To State A Claim Pursuant To Chapter 93A As To GS Group

#### 1. Plaintiff's Chapter 93A claim is time-barred

Claims for violation of Chapter 93A must be brought within 4 years of when the claim arose. Mass. Gen. L. ch. 260, § 5A. It is well settled in the context of mortgage loan transactions, that the statute of limitations on claims arising out of issues related to the loan's

terms begins to accrue on the date of the closing of the loan and that "plaintiffs [a]re on notice of their claims when they sign[] their loan documents." Salois v. Dime Sav. Bank of New York, FSB, 128 F.3d 20, 26 (1st Cir. 1997) (affirming dismissal of federal and state fraud claims where "the loan documents plaintiffs signed would have put them on notice of the fraud"); Da Silva v. U.S. Bank, N.A., 885 F. Supp. 2d 500, 504 (D. Mass. 2012) (dismissing Chapter 93A claim because "a violation involving an issuance of a loan begins to accrue from the moment the parties entered into the loan").

Here, as alleged in the Complaint, plaintiff's claims arose at the time of his First Loan transaction with FIL on April 7, 2006. Compl. ¶ 14. Indeed, plaintiff concedes the statute began running in 2006 when he alleged that his loans "were doomed to fail from the time they were originated" in April 2006. Id. ¶ 50. As of the time of closing on April 7, 2006, having signed his loan documents, plaintiff had all of the information that he needed to bring a claim and, therefore, was on notice of his claims. Da Silva, 885 F. Supp. 2d at 504. Plaintiff, however, did not file this action until July 19, 2013. Given that well over four years have passed since the closing and prior to plaintiff's filing of this action, plaintiff's Chapter 93A claim is time-barred and must be dismissed. See Trans-Spec Truck Service, Inc., 524 F.3d 315, 327 (1st Cir. 2008) (dismissing Chapter 93A claims brought more than four years after cause of action accrued).[4]

### 2. Plaintiff failed to send a Chapter 93A demand letter to GS Group

Pursuant to Chapter 93A, a plaintiff is required to send "to any prospective respondent," "[a]t least thirty days prior to the filing of any such action, a written demand for relief,

---

[4] Although plaintiff purports to allege conduct concerning the collection of payments and certain loan modification efforts he may argue are within the four-year period, the allegedly wrongful acts that gave rise to plaintiff's claim based on that conduct, namely, the purportedly improper terms of the loan at origination that caused interest to be charged and plaintiff to be unable to afford the loan, see Compl. ¶¶ 49-50, accrued in 2006, and thus are well beyond the applicable statute of limitations period.

identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered." Mass. Gen. L. ch. 93A, § 9(3). To sustain his Chapter 93A claim, plaintiff must specifically allege, and prove, that he made the requisite pre-suit demand on GS Group. Spring v. Geriatric Auth. of Holyoke, 394 Mass. 274, 287 (1985); Giuliano v. Nations Title, Inc., 134 F.3d 361, No. 96-2331, 1998 WL 45459, at *8 (1st Cir. Jan. 23, 1998) (complaint subject to dismissal where it failed to allege that before filing complaint, plaintiff made written demand to defendant alleging Chapter 93A violation). Failure to make such a demand, or to allege that he has done so, is fatal to plaintiff's Chapter 93A claim. Ball v. Wal-Mart, Inc., 102 F. Supp.2d 44, 54 (D. Mass. 2000) (dismissing Chapter 93A claim because plaintiff "neither alleged that she sent a 30-day demand letter to [defendant] nor has she attached such a letter to her complaint"); McMahon v. Digital Equip. Corp., 944 F. Supp. 70, 77 (D. Mass. 1996) (dismissing complaint for failure to specifically allege Chapter 93A letter sent to defendant).

Nowhere does plaintiff allege that he served a demand letter on GS Group, and does not attach a demand letter to GS Group to his Complaint. Accordingly, the failure to send GS Group a demand letter alone precludes plaintiff's Chapter 93A claim. Ball, 102 F. Supp. 2d at 54.

### 3. Plaintiff's Chapter 93A claim against GS Group is without merit

Even if plaintiff's Chapter 93A claim was not time-barred and procedurally defective, it would nevertheless fail to allege an unfair or deceptive predicate act that would give rise to a claim under Chapter 93A.[5] Plaintiff has failed to allege, and cannot allege, any facts sufficient to demonstrate that the First Loan was presumptively unfair within the meaning of Com. v.

---

[5] Chapter 93A renders unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2(a). For conduct to be considered actionable, "(1) it must fall within at least the penumbra of some common-law, statutory, or other established concept of unfairness, (2) it must be unethical or unscrupulous, and (3) it must cause substantial injury to a consumer or another businessman." FAMM Steel, Inc. v. Sovereign Bank, 571 F.3d 93, 107 (1st Cir. 2009).

Fremont Investment & Loan, 452 Mass. 733, 739 (2008).

Under Fremont, a loan is presumptively unfair if: (1) it is an ARM with a teaser rate that lasts three years or less; (2) the initial interest rate is at least 3% lower than the fully indexed rate; (3) the borrower's debt-to-income ratio would be greater than 50% if the DTI was calculated using the fully indexed payment; and (4) either: (i) the loan-to-value ratio is greater than 100%; (ii) there is a large prepayment penalty; or (iii) the prepayment penalty term extends beyond the first interest-rate reset. Fremont Investment & Loan, 452 Mass. at 739. Yet, plaintiff's Complaint does not address elements 2, 3, or 4 of the Fremont test, and thus in no way establishes his loan is subject to Fremont. Because plaintiff's underlying claim is without legal basis, his Chapter 93A claim cannot stand. See FAMM Steel, Inc. v. Soverign Bank, 571 F.3d 93, 108 (1st Cir. 2009); Pimental v. Wachovia Mortg. Corp., 411 F. Supp. 2d 32, 40 (D. Mass. 2006) (plaintiff mortgagor precluded from bringing Chapter 93A claim against mortgagee where claim based on unsustainable breach of contract and negligence claims); Egan v. Athol Mem. Hosp., 971 F. Supp. 37, 47 (D. Mass. 1997) (where there was no evidence of alleged predicate statutory violation, and where there were "no unique arguments related to [the] Chapter 93A claim," defendant was entitled to dismissal of Chapter 93A claim).

### D. Plaintiff Fails To State A Claim For Declaratory Relief Against GS Group

To the extent plaintiff seeks declaratory relief against GS Group, a claim for declaratory judgment "is a procedural device" and is not available as a remedy to the extent that the underlying substantive claim is barred. See, e.g., John Beaudette, Inc. v. Sentry Ins. A Mut. Co., 94 F. Supp. 2d 77, 98 (D. Mass. 1999) (request for declaratory relief barred where underlying cause of action is barred); see also Lefkowitz v. Lider, 443 F. Supp. 352, 358 (D. Mass. 1978) (absent some independent basis for relief, "the added remedy of declaratory relief cannot be

granted"). Here, the basis for plaintiff's declaratory relief with respect to the First Loan (to the extent such a claim has been lodged against GS Group) is that the loan was "presumptively unfair" under Fremont at the time of origination. See Compl. at ¶¶ 26, 29, 49, 50. Because plaintiff has failed to state a claim that his First Loan falls within the scope of Fremont, let alone allege a viable claim against GS Group on an agency theory of liability, and because he cannot hold GS Group liable based on actions of Litton, plaintiff cannot maintain any requests for declaratory or injunctive relief that are dependent on a Chapter 93A claim. See Lefkowitz, 443 F. Supp. at 358.

## IV. CONCLUSION

For the foregoing reasons, GS Group respectfully requests that the Court grant its Motion to Dismiss, dismiss plaintiff's Complaint against GS Group in its entirety and with prejudice, enter judgment for GS Group, and grant such other and further relief as the Court deems appropriate.

Respectfully submitted,

THE GOLDMAN SACHS GROUP, INC.

By its attorneys,

*/s/ Ryan M. Tosi*
Ryan M. Tosi (BBO# 661080)
   ryan.tosi@klgates.com
Lindsay S. Bishop (BBO# 670251)
   lindsay.bishop@klgates.com
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
617-261-3100 (phone)
617-261-3175 (fax)

Dated: January 10, 2014

## CERTIFICATE OF SERVICE

       I hereby certify that this **Memorandum of Law in Support of The Goldman Sachs Group, Inc.'s Motion to Dismiss Plaintiff's Complaint**, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants, if any, on January 10, 2014.

                                                */s/ Ryan M. Tosi*
                                                Ryan M. Tosi